# KENNETH J. BYLUND
*v.*
# DEPARTMENT OF REVENUE
## Intervenors:
## GERALD and MARGUERITE SAUNDERS

William A. Van Vactor, Assistant County Counsel, Lane County Office of Legal Counsel, Eugene, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Donald A. Gallagher, Jr., Jaqua & Wheatley, P.C., Eugene, represented intervenors.

Decision for defendant-intervenors rendered November 30, 1978.

CARLISLE B. ROBERTS, Judge.

Pursuant to ORS 305.560 and 305.570, the plaintiff, Director of Assessment and Taxation, Lane County, Oregon, charged with the assessment and collection of taxes in Lane County, has appealed from the

Department of Revenue's Order No. VL 77-786, dated December 30, 1977. The issue is the true cash value, as of January 1, 1977, of certain real property identified in the assessor's records as Assessor's Account No. 160810 (Tax Lot 300) and No. 160927 (Tax Lot 1100). Only the value of the land and some trees on the perimeter of the property is at issue.

The subject property, located on the North Delta Highway just outside the Eugene city limits, consists of two adjoining, contiguous parcels. Tax Lot 300, covering 13.73 acres, is the rear lot, and has no public access. Tax Lot 1100, comprising 11.94 acres, is the front lot, with over 160 feet of road frontage along North Delta Highway. Both lots were zoned SG/CP (Sand, Gravel, and Rock Products — Controlled Processing District) as of the assessment date. The property, owned by the intervenors Gerald and Marguerite Saunders, and leased to Eugene Sand and Gravel Company, was and is used as a sand and gravel processing plant site.

As of the assessment date, the county's assessed value for the property was $137,300 for Tax Lot 300, and $119,400 for Tax Lot 1100, for a total of $256,700. The Lane County Board of Equalization reduced these land values to $35,320 for Tax Lot 300, and $79,460 for Tax Lot 1100, a total value of $114,780. The Department of Revenue sustained the board of equalization values in its Order No. VL 77-786. Subsequently, plaintiff pleaded for a value of $256,700, while defendant and intervenors pleaded that the Department of Revenue's order should be affirmed in all respects. In the trial before this court, plaintiff's expert witness concluded that the value of the subject property should be $216,700 ($40,000 less than pleaded) and the intervenors' expert contended the property should be valued at $165,000 (over $50,000 more than pleaded). These discrepancies are of interest, illustrating once again the highly subjective quality of the concept of value, even among expert witnesses, acting in good faith. Nevertheless, the court

[ 533 ]

is not confined to the values pled by the parties. Rather, it is the court's duty to determine value based upon the preponderance of the evidence before it. ORS 305.427; ORS 305.435; *Noyes v. Dept. of Rev.,* 7 OTR 325, 329 (1978).

█ The goal of the appraisal process is to determine the property's true cash value, which is its market value as of the assessment date. ORS 308.205. In seeking the goal of true cash value, plaintiff's appraiser considered three approaches: market data, capitalization of lease income, and "market level royalty income capitalization." Each of his approaches yielded an estimated market value of between $216,700 and $234,500. Plaintiff's appraiser concluded the market data approach, based on comparable sales, was the most reliable. Under his analysis, comparable sales yielded an indicated bare land value of $5,000 per acre for 10.27 acres. Inasmuch as part of the subject property was filled ground, he also relied on comparable sales to arrive at a "fill cost" adjustment of $5,000 per acre-foot, for a total of $10,000 per acre for the 15.4 acres which he believed had been "stabilized" to an average depth of one foot. (He included in his stabilized acres the land under gravel stockpiles which he assumed to be compacted by the weight of the gravel.) Finally, he added $11,400 to the bare land and stabilized land values to account for the 152 trees located on the perimeter of the subject property. He then broke down the total value estimate of $216,700 between the two tax lots.[1]

---

[1]

| | Total | Tax Lot 300 | Tax Lot 1100 |
|---|---|---|---|
| Plaintiff's Approach—Market Data | | | |
| Bare land. (10.27 A.) ($5,000/acre) | $ 51,350 | (7.63 A.) $ 38,150 | (2.64 A.) $ 13,200 |
| Stabilized land ...... (15.40 A.) ($10,000/acre) | 154,000 | (6.10 A.) 61,000 | (9.30 A.) 93,000 |
| Trees ...... (152 trees) ($75 each) | 11,400 | (76 trees) 5,700 | (76 trees) 5,700 |
| Total.......................... | $216,700 (rounded) | $104,800 (rounded) | $111,900 |

The intervenors' appraiser investigated the market value of the subject property under both the market data and capitalized income approaches. He discarded the market data approach because he found only two possible "comparable" sales (also considered by plaintiff), both of which were, in his opinion, too dissimilar to the subject to be reliable. Instead, he relied on the capitalized income approach. Under this approach, he divided the annual net income from the intervenors' lease of the subject property, $10,824 per year, by a capitalization rate of 8.5 percent (selected from a number of capitalization rate comparables), to yield an indicated bare land value of $127,500 for the 25.67 acres. To this amount, he added the lessee's improvements to the land, consisting of fill and perimeter tree planting (the latter apparently required under the SG/CP zoning). He added fill costs of $3,000 per acre for the 11.2 acres which he believed were stabilized. Finally, he added a value for the trees of $4,104, computed at $27 per tree (the estimated cost on January 1, 1977, for a 3-to-4-foot tree, the height of the trees when planted). Intervenors' appraiser allocated this $165,000 valuation between the two tax lots.[2]

2

#### Intervenors' Approach—Capitalized Lease Income

| | Total | Tax Lot 300 | Tax Lot 1100 |
|---|---|---|---|
| Bare land* (25.67 A.) | $127,500 | (13.73 A. $46,545 x $3,390/A.) | (11.94 A. $80,955 x $6,780/A.) |
| Fill costs... (11.20 A.) ($3,000/acre) | 33,600 | (5.9 A.) 17,700 | (5.3 A.) 15,900 |
| Trees ...... (152 trees) ($27 each) | 4,104 | (60 trees) 1,620 | (92 trees) 2,484 |
| Total.......................... | $165,000 (rounded) | $66,000 (rounded) | $99,000 (rounded) |

*Lease income ($10,824 annually) ÷ capitalization rate (8.5%) = value ($127,500).

Intervenors' appraiser believed the bare land on Lot 1100 had twice the value ($6,780/acre) of Lot 300 ($3,390/acre), since Lot 1100 had access and frontage, while Lot 300 did not. Having established the total bare land value of both lots at $127,500, he broke down this value into the respective lots through an arithmetic computation.

[ 535 ]

As the table below indicates,[3] the parties, although they utilized two different approaches, came remarkably close to agreeing on the bare land value of the subject property ($128,350 versus $127,500). The parties obviously did not agree, however, on (1) the number of acres "filled" or stabilized (15.4 versus 11.2); (2) the cost per acre-foot to stabilize ($5,000 versus $3,000); (3) the value per tree ($75 versus $27).

Regarding the first item, plaintiff adjusted the bare land value for 15.4 acres of "stabilized" land. Intervenors found it proper to adjust only 11.2 acres. The court finds that intervenors' acreage figure is more reasonable, because it excludes areas under concrete

---

[3] A close inspection of nn 1 and 2, *supra,* reveals that the tables therein are not directly comparable. For example, plaintiff's "bare land" value in n 1 includes the total value of only the 10.27 acres on which there was, in plaintiff's opinion, no "stabilization." Intervenors' "bare land" value includes the entire 25.67 acres, valued as if none of the land had been "filled." Further, plaintiff's "stabilized land" value includes the total value of the 15.4 "stabilized" acres when filled, while intervenors' "fill costs" figure includes only the value by which the filled land increased as a result of being filled.

The following table remedies the inconsistencies and allows a direct comparison between plaintiff's and intervenors' valuations:

| | Plaintiff | | Intervenors | |
|---|---|---|---|---|
| | (Bare land) | | (Bare land) | |
| Lot 300 ......(13.73 A. | $ 68,650 | | (13.73 A. | $ 46,545 |
| x $5,000) | | | x $3,390) | |
| Lot 1100 ....(11.94 A. | 59,700 | | (11.94 A. | 80,955 |
| x $5,000) | | | x $6,780 | |
| Total ......(25.67 A. | | $128,350 | | $127,500 |
| x $5,000) | | | | |
| | (Fill) | | (Fill) | |
| Lot 300 ......(6.1 A. | 30,500 | | (5.9 A. | 17,700 |
| x $5,000) | | | x $3,000) | |
| Lot 1100 ....(9.3 A. | 46,500 | | (5.3 A. | 15,900 |
| x $5,000) | | | x $3,000) | |
| Total ......(15.4 A. | | 77,000 | (11.2 A. | 33,600 |
| x $5,000) | | | x $3,000) | |
| | (Trees) | | (Trees) | |
| Lot 300 ......(76x$75) | 5,700 | | (60x$27) | 1,620 |
| Lot 1100 ....(76x$75) | 5,700 | | (92x$27) | 2,484 |
| Total ......(152x$75) | | 11,400 | (152x$27) | 4,104 |
| | | $216,700 | | $165,000 |
| | | (rounded) | | (rounded) |

[ 536 ]

aggregate stockpiles, surge piles, and other areas where the allegedly compacted land was native soil; the filled acreage includes only those acres to which the "pit run" fill was brought for the sole purpose of stabilization.

As to the fill costs, this court believes that intervenors' figure of $3,000 per acre-foot is more reasonable than plaintiff's adjustment of $5,000. Intervenors computed the cost per acre-foot by comparing three recently placed bid prices for "pit run" in the area. Plaintiff's two comparables were less reliable. In one of those comparables, a time constraint was involved, which increased the costs for overtime, leasing equipment, etc. The other comparable involved fill made with quarry rock, which is much more costly than filling with "pit run." The result is that plaintiff's comparables overestimate the value of the filled portion of the subject property.

Finally, regarding the tree costs, intervenors' approach is again the more reasonable. Plaintiff's value of $75 per tree is based upon the market value of a 7-to-10-foot tall tree, the height of the trees as of the January 1, 1977, assessment date. Defendant's value is based upon the value of a 3-to-4-foot tree, the height of the trees when planted. It appeared from the evidence that the lessee, Eugene Sand and Gravel Company, was required to plant trees of a minimum 3-to-4-foot height, apparently to comply with the zoning ordinance. It is unlikely that a willing buyer, intending to use the property for its current purposes (*i.e.,* sand and gravel processing), would pay more for the trees than it cost to comply with the zoning ordinance.

The court concludes that the preponderance of the evidence has been adduced by the intervenors. The court holds that the true cash value of the subject property on January 1, 1977, was $165,000. Of this amount, the court finds that $66,000 is the value of Tax Lot 300 and $99,000 is the value of Tax Lot 1100.

Defendant's Order No. VL 77-786 is modified in accordance with this decision and plaintiff's appeal is dismissed.

Each party shall bear its own costs and disbursements.